The plaintiff claimed the lands described in the annexed diagram by the lines A, H, G, E. The defendant claimed those described by the lines K, B, D, O, L, R, S, T, and the question in dispute as to boundary was whether the plaintiff's tract was bounded on the north by the line B, D, or A, E.
(338)
[EDITORS' NOTE: THE MAP IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 9 N.C. 190.]
The tract marked M was granted to John McGee in 1761; that marked P was granted to Thomas Willborn in 1761; and that marked N was granted to Esther Willborn in 1784. Esther Willborn conveyed N to James Fruit in 1794, and James Fruit conveyed to the plaintiff.
The grant to Esther Willborn was as follows: "Beginning at a stake, the corner of a tract she now lives on" (she then lived on P), "and running north along McGee's line 80 poles to a black oak, then east 100 poles to a small black jack, then south 80 poles to a black oak corner, then westalong the said old line 100 poles to the beginning." *Page 191 
The plaintiff alleged that the beginning was at a stake at C, and that theblack oak called for as a corner to the third line was at F. The defendant insisted the beginning was at a stake at B, and (339) that the black oak called for in the third line was at D.
The grant to Thomas Willborn, under whom the defendant claimed, was as follows: "Beginning at a black oak sapling" (at D, as defendant said), "then running south 61 chains to a white oak (O), then west 28 poles to a red oak, York's corner, then west 6 1/2 poles to a white oak (L), thence north 32 1/2 chains to a white oak (R), then west 10 chains to a hickory bush (S), then north 19 chains to a white oak on McGee's line (T), then along his line east 20 chains to a hickory (K), then along his line north 10 chains to a stake (B, as defendant contended, and C according to plaintiff's allegation), then east 25 chains to the beginning."
As to the line C F: It appeared that there were marked trees on it, two of which, as the surveyors judged from their external appearance only, might be as old as the year 1761. The other trees on this line were of the same age with the trees on the lines A E and B D, both of which were marked. It was not shown on the trial who marked C F, or for what purpose it was done.
As to the line A E: It appeared that in 1797, the year after the defendant purchased the tract P, Fruit, the plaintiff, and himself, erected a stone at A for the beginning of the land which Fruit had purchased of Esther Willborn; that there were on the line A E marked trees corresponding in age with Fruit's deed; that Brower acquiesced in the corner A and the line A E as Fruit's boundary until the year 18__, when Fruit had his land processioned; after which Brower, beginning at K and running north along McGee's line, discovered that the stone erected at A was short of 10 poles, the distance called for in Thomas Willborn's grant, but that the distance terminated at B, and Brower thenceforward claimed to B. It was not shown why or by whom this line was marked.
As to the line B D: Defendant called a witness, Jones, who stated (340) that for fifty-three years he had lived in the neighborhood and heard the black oak at D called Thomas Willborn's corner; that when he first knew it, it was a small sapling, and the marks were then visible, but that as it grew in size the marks disappeared. He further stated that in 1794, on the purchase by Fruit from Esther Willborn, Elliot, who had been for many years surveyor of Randolph, surveyed the land in Fruit's presence and then stopped at D, as Thomas Willborn's corner; the old marks upon the black oak at D had not then *Page 192 
disappeared; Elliot marked it then as Fruit's corner and also marked several dogwood trees as pointers, and running thence west to a stake at B, marked the line B D. The pointers, it appeared, were still standing, and the line B D corresponded in age with Elliot's survey and Fruit's deed.
As to the corner at D, it appeared in opposition to the testimony of Jones that the tree having been broken down by a storm, the heart for about an inch in diameter was rotten, and that the lamina or annual growths from the rotten part counted in 1822 forty-nine — that this tree was marked as the corner of Thomas Willborn's, and not of Esther Willborn's tract, in the same year with the lines B D, and A E and most of the trees on C F.
On these facts the defendant contended, (1) that the evidence proved the line B D to be Thomas Willborn's line — and (2) that if the evidence left the locality of Thomas Willborn's line doubtful, yet the plaintiff could not claim farther south than the line B D, as that line and the corner at D were marked as his line and corner when Esther Willborn conveyed to him. That although the grant to Esther Willborn and the deed to Fruit called for this line as running from the black oak corner "along the said old line west to a stake in McGee's line, yet it did not appear either from the grant or from her deed that the said oldline was Thomas Willborn's line, inasmuch as his line had not been previously mentioned in the grant or deed nor any old line
(341) except McGee's line.
The court instructed the jury that if from all the evidence they believed that Thomas Willborn's line was to the south of the line B D the plaintiff was entitled to hold to his line, and the line from G south was to be extended to it, notwithstanding the corner D and the line B D were marked as his corner and line. Verdict for plaintiff, new trial refused, judgment and appeal.
There was much conflicting evidence in this case, relative to where the old line was, of which it was the province of the jury to judge. The court instructed the jury that the plaintiff's boundary extended to Thomas Willborn's line wherever that was, notwithstanding that the corner D and the line B D were marked as his corner and line.
This is in conformity with Blount v. Benbury, 3 N.C. 354, and many other cases that have arisen. A new trial is refused.
No error.
Cited: Dobson v. Whisenhant, 101 N.C. 648; Brown v. House, 118 N.C. 880. *Page 193